UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
KEREN HABINYON HACHUDOSH
D'RABEINU YOEL OF SATMAR BP,

            Plaintiff,

- against -

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

           Defendant.
-------------------------------------------------------X

**MEMORANDUM & ORDER**
08-CV-4726 (RRM)(JMA)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ MAR 11 2011 ★
BROOKLYN OFFICE

**MAUSKOPF, United States District Judge.**

Plaintiff Keren Habinyon Hachudosh D'Rabeinu Yoel of Satmar BP ("Plaintiff"), a subsidiary of United Talmudic Academy ("UTA"), brings this action against Philadelphia Indemnity Insurance Co. ("Defendant"). Plaintiff alleges that Defendant is liable for $1,294,947.14 in damages to Plaintiff's insured property at 25 West Street ("25 West"), which was vandalized and looted on or about October 7, 2007. (Pl.'s Mot. for Summ. J. ("Pl. Mot.") ¶ 2.) Defendant maintains that it is not liable for the damage because, at the time of the incident, the building was vacant as defined in the insurance policy, and thus excluded from coverage under the terms of the policy. (Def.'s Cross-Mot. for Summ. J. ("Def. Mot.") 8.) Plaintiff now moves for summary judgment to compel recovery. Defendant cross-moves for summary judgment seeking dismissal of Plaintiff's complaint. For the reasons set forth below, Plaintiff's motion for summary judgment is denied, and Defendant's cross-motion for summary judgment is granted.

1

## BACKGROUND

**1. Facts**

Plaintiff added 25 West to its insurance policy in April of 2004 under the description "High School." (Def. Mot. Ex. C, at 1.) The policy included commercial property and/or general liability insurance for eleven premises associated with the Plaintiff's "specialty/trade school." (Pl. Mot. Ex. C, at 1, 3.) The policy provides that Defendant will not be liable for theft or damage from vandalism where a building is vacant, as defined in the insurance policy. (*Id.* at 20.) In relevant part, the policy states:

> Vacancy
>> When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>>> ii. Used by the building owner to conduct customary operations
>>
>> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
>> (1)    We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>>>> a. Vandalism
>>>> [...]
>>>> e. Theft

(*Id.*) Thus, the Plaintiff agreed that the policy will not cover loss from vandalism or theft of 25 West "unless at least 31% of its total square footage" is used by the Plaintiff "to conduct customary operations" within "60 consecutive days before that loss or damage occurs." (*Id.*)

In 2007, when the insurance policy was renewed, 25 West was listed generally amongst the eleven other premises. (Pl. Mot. Ex. C, at 13.) The property was initially acquired and used as a school for 7th to 8th grade boys. In February of 2006, parents voiced concerns regarding the location of 25 West and UTA ceased daily use of the building as a school. (Def. Mot. Ex. A, at 21-22.)

Following the closure of the school, 25 West became predominately used for the storage of school supplies, furniture, and computers. (*Id.* at 41; Def. Mot. Ex. B, at 10.) Plaintiff concedes that there has been no electricity or gas in the building since 2006. (Def. Mot. Exs. A, at 46; B, at 12.) Although water was maintained, Plaintiff was exempt from paying water bills. (Def. Mot. Ex. A, at 45.) Absent teachers and students, 25 West was placed under the care of Plaintiff's building custodian, Isaac Friedman. (*Id.* at 44.) Plaintiff's executive director, Rabbi Aaron Weltz, alleges that Friedman was present at the building "two or three times a week" for the purpose of loading and unloading storage. (Def. Mot. Ex. A, at 43.)

According to Rabbi Weltz, there were also "infrequent" staff meetings and teacher training sessions at 25 West. (Def. Mot. Exs. A, at 45; B, at 25.) More specifically, Rabbi Fulob, a teacher/principal with UTA, submitted a sworn affidavit[1] alleging that on August 21, 2007, he attended a meeting of twenty-five teachers at 25 West and that during the meeting children were allowed to play on the rooftop.[2] (Pl.'s Opp. to Cross-Mot. and in Supp. of Pl.'s Mot. ("Pl. Reply") Ex. A, at 1-2.) Rabbi Fulob further alleges that lunch was served to "several hundred students" in the dining room that day. (*Id.* at 2.) However, due to the lack of heating and electricity, Weltz and Friedman both agreed that teachers and students only visited 25 West in the daylight and in the warmer months. (*Id.*)

---

[1] Defendant challenges Rabbi Fulob's sworn affidavit because it first appears in Plaintiff's reply to Defendant's cross-motion for summary judgment. (Def.'s Reply in Supp. of Cross-Mot. for Summ. J. ("Def. Reply") 1.) Plaintiff alleges that the affidavit merely elaborates on an unsworn letter from Rabbi Fulob that was submitted as an exhibit in the Plaintiff's original motion alleging that the students were present on the day in question. (Pl.'s Mot. Ex. M, at 1.) Even accepting Fulob's affidavit as admissible evidence, Plaintiff fails to show a genuine issue of material fact sufficient to deny Defendant's motion for summary judgment.

[2] Rabbi Fulob also alleges that some of the school's children played on the rooftop on July 30, 2007, although this fact is immaterial as this activity was not within 60 days of the claimed loss by Plaintiff. (Pl.'s Reply Ex. A, at 1.)

According to Rabbi Fulob, 25 West was further used: (1) when there were scheduling issues with Plaintiff's other locations; (2) when returning from field trips in New Jersey; and (3) because it allegedly had the largest meeting room and rooftop playground. (Pl. Reply Ex. A, at 2.) Although Rabbi Weltz could not provide the exact number of 2007 teacher/student visits, he suggested that it happened "maybe twice" that summer. (Def. Mot. Ex. A, at 46.)

Rabbi Weltz also alleged in his deposition that Plaintiff had plans to use the building in the near future for older children, and in July of 2007 work was done to the roof. (Pl.'s Mot. Ex. L, at 1; Def. Mot. Ex. A, at 42.) However, Weltz could not definitively say that the minutes of the school board's meetings would demonstrate intent to revive 25 West as a school. (Def. Mot. Ex. A, at 43.)

On October 7, 2007 substantial damage to 25 West was discovered.[3] (Pl.'s Mot. Ex. E at 46-48.) Plaintiff submitted a claim under its insurance policy to Defendant for the sum of $1,294,947.14. (Pl.'s Mot. ¶ 2.) The claim was denied by letter of July 28, 2008 in which Defendant asserted that the property was deemed "vacant" under the policy. *Id.*

---

[3] While evidence of the actual damage is not relevant to this decision, according to Joseph Rizzo, Defendant's insurance adjuster:

> There was a significant amount of mold growth on the lower floors, there were holes that were punched or kicked through the partitioned walls in many of the rooms, graffiti scrawled all over the place. . . many of the sinks in the building had been torn off their attachments, that was the source of a lot of the water that flowed in the building from the time the sink was torn off until the time the loss was discovered. There was still water in the building when I was there. The floors were wet, particularly in the hallways . . . there were several points of fire.

(Pl.'s Mot. Ex. E, at 46-48.)

## 2. Procedural History

Plaintiff commenced this action against Defendant in the Supreme Court of the State of New York, County of Kings, on August 22, 2008. On November 20, 2008 Defendant removed this action to the United States District Court for the Eastern District of New York, asserting federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332. On January 3, 2010 Plaintiff moved for summary judgment pursuant to Fed. R. Civ. P. 56, and Defendant cross-moved for summary judgment on February 3, 2010. (Def. Mot. at 1.)

# DISCUSSION

## 1. Legal Standard

Summary judgment will be granted "where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby Inc.*, 447 U.S. 242, 248 (1986). Moreover, all factual inferences must be drawn in favor of the non-moving party. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).

"The tests to be applied in construing an insurance policy are common speech and the reasonable expectation and purpose of the ordinary businessman." *Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398, 469 N.Y.S.2d 655, 457 N.E.2d 761 (1983) (citations omitted). Any ambiguities in the policy are construed against the insurer, particularly when such ambiguity is contained in an exclusionary clause. *Id.; Belt Painting Corp.*, 100 N.Y.2d 377, 383, 763 N.Y.S.2d 790, 795 N.E. 15 (2003). Nevertheless, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning . . . and the interpretation of such provisions is a question of law for the court." *White v. Continental Cas. Co.*, 9 N.Y.3d 264, 267,

848 N.Y.S.2d 603, 878 N.E.2d 1019 (2007) (citations and internal quotation marks omitted). Defendant bears the burden of proof with respect to the applicability of insurance exclusions. *Consol. Edison Co. of N.Y., Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 220, 746 N.Y.S.2d 622, 774 N.E.2d 687 (2002).

## 2. Customary Operations

The policy exclusion is unambiguous and was clearly intended to apply to the customary operations of a school. While the policy does not define "customary operations," the parties do not dispute that 25 West was initially insured as a "High School," and at no point, until after the loss, did Plaintiff inform Defendant otherwise. Given the context of the provision, and the reasonable expectation of the parties, customary operations cannot be interpreted as anything other than the customary operations of a school.

Similarly, in *Saiz et al. v. Charter Oak Fire Ins. Co.*, No. 06-CV-1144 (EWN)(BNB) 2007 WL 2701398 (D. Colo. Sept. 12, 2007), the court interpreted a vacancy provision in an insurance policy for a restaurant, reasoning that based on the plain and ordinary meaning of the phrase "customary business operations" the policy referred unambiguously to "the business of operating a restaurant." *Id.* at *5. Here, the policy entered into by a school unambiguously applies to the customary operations of a school.

## 3. Plaintiff's Use of 25 West

25 West was not being used by the Plaintiff to conduct customary operations of a school within 60 days of the loss. Although the school was used for storage and one teacher/student gathering, such activity cannot be reasonably expected to constitute customary operations of a

school where there was no regular faculty, student body, or teaching and learning taking place at 25 West.

As stated by Rabbi Weltz, the customary operations of the school at 25 West included: "staff meetings, parties, lunchroom use, religious classes for 7th and 8th grade boys, special education classes, storage, general assemblies, educational seminars, teacher training, student get togethers, and use of a fenced in rooftop playground." (Pl. Mot. ¶ 8.) Plaintiff argues that the term "customary operations" only requires that the building be used for "some" customary operations of a school, being that the contract did not explicitly say "all" customary operations.

Plaintiff asserts that it used 25 West for its customary operations within 60 days of the loss discovered on October 7, 2007[4] because during that time: (1) teachers/students visited 25 West once for a teacher meeting where the students played on the roof and lunch was served, (2) Mr. Freidman allegedly visited 25 West two to three times a week for maintenance and to move supplies and furniture and (3) the building was being used for storage of school supplies and furniture.

Although it is true that the contract does not specify that all customary operations of a school must have been conducted within the time span, it would be unreasonable to conclude that Plaintiff's usage of 25 West was sufficient to show that the customary operations requirement of the policy was met in this case. A one-day event involving some activities that would take place at a school coupled with storage and custodial activities is insufficient to show customary operations of a school under this insurance policy, especially where 25 West had no permanent student body or faculty, no electricity, no gas, and clearly was not operating as a school.

---

[4] Under the policy, future events are irrelevant in determining whether or not the building was vacant, as defined by the contract, 60 days prior to the date of the loss. Thus, any statements as to why 25 West would likely be used, or any attenuated plans to resurrect 25 West as a school, are irrelevant.

Moreover, aside from the one day teachers and students were present at 25 West, Plaintiff concedes that Mr. Friedman was the only representative of UTA to visit the building within 60 days of the loss.

In *Sorema North American Reinsurance Co. v. Johnson*, the court found "nothing ambiguous" about a vacancy exclusion provision that used the term "customary operations" and held that merely storing old meat packaging equipment, in a building formerly used for packaging meat, was insufficient to suggest the building was being used for its customary operations. 258 Ga. App. 304, 306, 574 S.E.2d 377 (2002). Similarly in *Saiz*, the court reasoned that merely using the basement office of a restaurant after the restaurant's permanent closure did not fall within the rubric of the customary operations of a restaurant, even though restaurants often have offices. 2007 WL 2701398, at *5.

Plaintiff also claims that it had plans to use 25 West in the near future and made roof repairs in July 2007. (Pl.'s Mot. Ex. L, at 1; Def. Mot. Ex. A, at 42.) Under the policy, future events are irrelevant in determining whether or not the building was vacant, as defined by the contract, 60 days prior to the date of the loss. Thus, any statements as to why 25 West would likely be used, or any attenuated plans to resurrect 25 West as a school, are irrelevant.

25 West was not being operated as a school. 25 West had no permanent student body or faculty, and no electricity or gas. The activities identified by Plaintiff, including one visit by teachers and students, cannot reasonably be expected to constitute customary operations of a school where the building is not being operated as a school.

### 4. Purpose of the Vacancy Provision

Accepting Plaintiff's interpretation of the vacancy provision would frustrate the purpose of the provision as understood by the ordinary businessman. The purpose of the vacancy provision in the instant action is to limit the risk of theft and vandalism, which would presumably be deterred by regular activity of a school at 25 West. The fact that no one ever used the building after dark because there was no electricity, no one used the building in the colder months due to a lack of heat, and that the building was only used a handful of times in the warmer months supports enforcement of the vacancy exclusion in this case. It is further unpersuasive that Mr. Friedman's sparse visits to 25 West to move furniture and to perform maintenance would provide the building with an appearance of occupancy so as to sufficiently minimize the risk of vandalism and theft to what would be considered foreseeable for a school, which was what was contracted for by the parties. As such, Plaintiff's interpretation of the vacancy provision is at odds with the purpose of the provision as understood by the ordinary businessman.

## CONCLUSION

In sum, because Plaintiff was not conducting customary operations at 25 West within 60 days of the damage, the policy exclusion applies to the loss incurred on or about October 7, 2007 and Plaintiff is barred from recovery. Plaintiff's motion for summary judgment is DENIED, and Defendant's cross-motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment accordingly, and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
March 10, 2011

s/Roslynn R. Mauskopf
_____
ROSLYNN R. MAUSKOPF
United States District Judge